[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF OPINION
CT Page 15779
This matter is before the court for a hearing in damages. The plaintiff seeks an order of the court enforcing the terms of an agreement between the parties.
The court heard testimony at the hearing in damages from which the court finds the following facts. The plaintiff, Fernando Bravo and the defendant, Deborah Brasa planned to marry. Prior to the planned marriage, in June of 1999 the defendant moved into the home owned by the defendant known as 25 Primrose Lane, East Hartford, Connecticut, (the "Property").
On July 6, 1999 the plaintiff and the defendant entered into a written agreement in which the defendant agreed to convey a A interest in the Property to the plaintiff. The parties acknowledged the good, valuable and sufficient consideration given for the agreement by their signatures thereon which were acknowledged by their attorney (the "Agreement").
The Agreement required that the plaintiff to pay the defendant $5,000 to pay-down the defendant's then-existing mortgage loan secured by the Property. It further provided that if the parties were no longer living together as a couple, the Property was to be sold as soon as possible and the plaintiff would be entitled to receive $5,000 plus 1/2 of the principal reduction of the mortgage.
The Agreement also provided that each party had an option to buy the property before it was listed for sale with a real estate agent under the circumstances described above. Further, the Agreement provided that so long as the plaintiff and the defendant were living on the Property, they would each pay 1/2 of the mortgage loan payments and other household expenses, but if either the plaintiff or the defendant vacated the Property, the party remaining in occupancy would be responsible for paying all of the mortgage loan payments and household expenses.
Finally, the Agreement provided that if a party who vacated the CT Page 15780 Property made any mortgage payments or paid any household expenses after vacating the Property (herein referred to as "overpayments"), such party was entitled to recover such overpayments, from the sale proceeds of the sale or buy-out of the Property.
The defendant quit claimed a 1/2 interest in the property to the defendant on July 6, 1999. The plaintiff refinanced the Property with a $96,800 mortgage loan from Chase Manhattan Mortgage Corporation on July 14, 1999. The loan proceeds of the refinancing, together with other funds were used to paying-off the defendant's mortgage loan balance of $104,778.67. In order to pay-off the defendant's mortgage loan and pay the cost of the refinancing, the plaintiff paid $111,317.06 and the defendant's mother paid $2,000.
Thereafter the defendant failed to pay her share of the mortgage loan payments and household expenses. The parties decided not to marry and the plaintiff vacated the Property in June of 2000.
Both during the time he lived at and after he moved out of the Property, the defendant made certain overpayments, consisting of 100% of certain household expenses and mortgage loan payments, totaling $7,065.42.
The defendant has not elected to exercise her option to buy the Property and has not listed the property for sale. The plaintiff therefore seeks to enforce the terms of the Agreement which entitle him to buy the defendant's interest in the Property and recover his overpayments.
The plaintiff retained an appraiser who attempted to appraise the Property, but the defendant denied the appraiser access to the interior of the Property. Bases upon an outside appraisal of the Property necessitated by the plaintiff's uncooperativeness, the plaintiff's appraiser appraised the Property, assuming the interior to be in average condition, as having a fair market value of $110,000. That amount was $5,000 less than otherwise comparable properties with an interior which was in good condition. The plaintiff testified that the interior was in average condition. The appraiser testified at the hearing in damages that the fair market value of the property had not changed since the date of the appraisal.
The defendant introduced into evidence a Chase Manhattan Mortgage Corporation Pay-off Breakdown as of October 23, 2000, stating that the amount needed to pay-off the plaintiff's mortgage on the Property was $96,204.01. That breakdown listed the plaintiff as the sole borrower. CT Page 15781
The court finds that the parties have $13,795.99 in equity in the property, based upon the $96,204.01 outstanding principal balance of the mortgage on the Property and the $110,000 fair market value of the Property. The court further finds that each party is entitled to 1/2 of the equity or $6,897.99, before deducting any overpayments.
The court further finds that the plaintiff is entitled to recover from the defendant overpayments of $7,065.42, as of the date of the hearing in damages, together with the attorneys fees incurred to maintain this suit of $750.00 and costs including of court, sheriff and witness fees totaling $494.60, for total of $8,310.02.
The court notes that the plaintiff did not seek to recover either the $5,000.00 which is provided for under section 2 of the Agreement or the principal reduction, presumably because the defendant is seeking sole ownership and possession of the property. The court has treated those amounts as having been forfeited.
In accordance with the Agreement the court finds that the plaintiff is entitled to possession of the Property and damages in the amount by which the plaintiff's overpayments and costs exceed the defendant's equity in the Property. Accordingly, the court hereby orders that all of the defendant's right, title and interest in and to the property be hereby vested in the plaintiff and in addition enters judgment for the plaintiff in the amount of $1,412.03.
The court further issues an execution of ejectment, commanding the ejectment of the defendant from the property on or after the thirtieth day following the date of this order in accordance with the procedure set forth in section 49-22 of the general statutes.
Bryant, J.